**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| KABLE DISTRIBUTION SERVICES, INC., | ) | Case No. 17-80075 |
| | ) | |
| Putative Debtor. | ) | Hon. Thomas M. Lynch |
| | ) | |

*FINAL*   **ORDER PURSUANT TO 11 U.S.C. § 105 AND 303 OF THE BANKRUPTCY CODE
AND FED. R. BANKR. P 9019 APPROVING THE SETTLEMENT AGREEMENT BY
AND AMONG PUTATIVE DEBTOR AND ALL PETITIONING CREDITORS ,
~~AND DISMISSING THE INVOLUNTARY PETITION WITH PREJUDICE~~**

This matter having come before the Court on a joint motion dated January 10, 2018 (the

"Motion") for an order (the "Order") approving settlement agreement attached hereto as Exhibit

"1" (the "Settlement Agreement") entered into by and among putative debtor Kable Distribution

Services, Inc. ("KDS") on the one hand, and petitioning creditors Lumina Media, LLC, f/k/a I-5

Publishing, LLC ("Lumina Media"), Active Interest Media, parent company of wholly owned

subsidiary Cruz Bay Publishing, Inc. ("Active Interest Media"), KSE Sportsman Media, Inc., a/k/a

InterMedia Outdoors, Inc. ("KSE Sportsman Media"), Archie Comic Publications, Inc. ("Archie

Comic"), Cruz Bay Publishing, Inc. ("Cruz Bay Publishing"), Key Publishing Group, LLC ("Key

Publishing") and Publications International Ltd. ("Publications International") (Lumina Media,

Active Interest Media, KSE Sportsman Media, Archie Comic, Cruz Bay Publishing, Key

Publishing and Publications International shall collectively be referred to as the "Petitioning

Creditors") on the other hand; and that notice of the Motion was good and sufficient and no other

or further notice need be given; and it appearing that the Settlement Agreement is in the best

interests of the putative debtor and its creditors, and all other parties in interest; and the Court

having reviewed and considered the request for approval of the Settlement Agreement; and upon

the consent of the putative debtor and all petitioning creditors that the involuntary petition be

dismissed, and upon the record of the hearing to approve the Settlement Agreement and to dismiss

the involuntary petition, and after due deliberation thereon, and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted.

2.     Pursuant to sections 105 of the Bankruptcy Code and Rule 9019 of the

Bankruptcy Rules, the Settlement Agreement attached hereto as Exhibit "1" is approved in its

entirety.

3.     The Petitioning Creditors are hereby allowed an administrative claim in an

amount not to exceed $225,000 for the satisfaction of professional fees and expenses which shall

be paid in accordance with the Settlement Agreement.  Such obligation arises under this Order

and is not on account of an antecedent debt and shall not be voidable in any subsequent

bankruptcy proceeding.

4.     Within five (5) business days of the payment of the allowed administrative claim,

Petitioning Creditors shall file a notice with the Court stating that the terms of the Settlement *together with a proposed Agreed Order stating this case*

Agreement have been performed (the "Notice"). *shall (be) dismissed with prejudice.* The time for the Petitioning Creditors to file the

Notice may be extended upon consent of the Parties.

5.     Pursuant to sections 105, 303(j) and 349, the involuntary petition *shall be* is dismissed

with prejudice upon the filing of the Notice.

6.     This Court retains jurisdiction to hear and determine all matters arising from the

implementation of this Order.

Dated: *Feb. 12* , 2018
Chicago, Illinois

THE HONORABLE THOMAS M. LYNCH
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "**Agreement**") is made and entered into this 29th day of December, 2017 by and between putative debtor Kable Distribution Services, Inc. ("**KDS**") on the one hand, and petitioning creditors Lumina Media, LLC, f/k/a I-5 Publishing, LLC ("**Lumina Media**"), Active Interest Media, parent company of wholly owned subsidiary Cruz Bay Publishing, Inc. ("**Active Interest Media**"), KSE Sportsman Media, Inc., a/k/a InterMedia Outdoors, Inc. ("**KSE Sportsman Media**"), Archie Comic Publications, Inc. ("**Archie Comic**"), Cruz Bay Publishing, Inc. ("**Cruz Bay Publishing**"), Key Publishing Group, LLC ("**Key Publishing**") and Publications International Ltd. ("**Publications International**") (Lumina Media, Active Interest Media, KSE Sportsman Media, Archie Comic, Cruz Bay Publishing, Key Publishing and Publications International shall collectively be referred to as the "**Petitioning Creditors**") on the other hand.  Hereinafter, the parties to this Agreement may be referred to collectively as the "**Parties**" or individually as a "**Party**".

## RECITALS

A.      Whereas, KDS was a national distributor of publications for its publisher company clients.  KDS would enter into distribution agreements with its publisher clients, whereby KDS would acquire the right to purchase from the publisher certain publications for the purpose of reselling and distributing those publications to wholesale buyers within certain territories.

B.      Whereas, in December, 2015, as a result of increased competition in digital media and other financial pressures in the industry, KDS determined, in its business judgment, that an orderly liquidation of KDS's assets was appropriate and in the best interest of KDS's secured and unsecured creditors.  Accordingly, KDS made the decision to stop operating its distribution business, collect its remaining receivables, and distribute the proceeds to its creditors.

C.      Whereas, in July and August, 2016, KDS sent final "settlement" statements to each of its publishing company customers, including each Petitioning Creditor, setting forth the amounts that KDS asserted was due and/or owing according to KDS's books and records.

D.      Whereas, in late August 2016, KDS offered and proposed what it asserts is a common law "composition" creditor agreement with each of its creditors (the "Common Law Composition Agreements").  On August 30, 2016, KDS, by and through its counsel, sent identical proposal letters to each of its creditors, informing each creditor of KDS's decision to liquidate its assets and enclosing a check to each creditor in an amount KDS represented to be each creditor's eight percent (8%) pro rata distribution.

E.      Whereas, the Petitioning Creditors dispute the effectiveness of KDS's proposal letters and whether they represented "final" settlement statements as alleged by KDS and also dispute the amount that KDS stated they were owed.

1

F.      Whereas, on January 13, 2017 (the "**Petition Date**"), Lumina Media, Active Interest Media, and KSE Sportsman Media filed an involuntary petition (the "**Involuntary Petition**") under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") against Kable (the "**Kable Involuntary Bankruptcy Proceeding**"), in the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**"), which was subsequently joined on different subsequent dates by Archie Comic, Cruz Bay Publishing, Key Publishing and Publications International.

G.      Whereas, on February 16, 2017, KDS filed a motion to dismiss the Involuntary Petition asserting that the Petitioning Creditors were not qualified to file the petition and that the amounts owed, if any, to the Petitioning Creditors was in dispute.

H.      Whereas, after briefing and argument, on August 10, 2017, the Bankruptcy Court denied the motion to dismiss, without prejudice, and permitted the Parties to conduct discovery on the disputed issues of fact in the motion to dismiss and Involuntary Petition.

I.      Whereas, KDS asserts that the cost of the discovery process would deplete the assets available to distribute to KDS's creditors.

J.      Whereas, the Parties engaged in mediation, conducted by the Honorable Donald R. Cassling, United States Bankruptcy Court for the Northern District of Illinois.

K.      The Parties agree that there exists a substantial controversy between them that they desire to resolve without the need to resort to further judicial or administrative proceedings.

L.      This Agreement shall not be construed as an admission by any Party of the truth of any allegation asserted by any of the Parties, in the KDS Involuntary Bankruptcy Proceeding or otherwise.

NOW THEREFORE, in consideration of the mutual covenants herein set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

## AGREEMENT

1.      <u>Incorporation</u>. The Recitals set forth above are incorporated by reference as if set forth fully herein.

2.      <u>Contingent Upon Court Approval</u>. This Agreement is contingent upon the entry of a final and non-appealable order of the Bankruptcy Court (the "**Final Order**") approving this Agreement and this Agreement shall only become effective after the date such event has occurred.  Within five business days of the Parties agreeing to the terms of this Agreement, KDS will file a motion with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019, seeking permission to settle the matters and issues described herein, and release all of the claims described herein, under the terms described herein (the "**9019 Motion**").

2

Unless otherwise agreed by all of the Parties, if the Bankruptcy Court denies the 9019 Motion, this Agreement will be null and void, and the Parties shall each have the same rights that they had prior to the execution of this Agreement.

3.    Dismissal of Involuntary Bankruptcy Case.  On the consent of all Petitioning Creditors and the Debtor, the Involuntary Petition shall be dismissed with prejudice by the Court Order approving this Agreement.

4.    Allowance of Administrative Expense.  The Parties agree that the Petitioning Creditors shall be allowed an administrative expense pursuant to 11 U.S.C. § 503(b)(3)(a) in the amount not to exceed $225,000 for reimbursement of reasonable compensation for professional services rendered for filing the involuntary petition and conducting an investigation to determine whether there are claims that could have been asserted in order to maximize the assets available for distribution to putative creditors of KDS.

5.    Payment of Allowed Administrative Expenses of Petitioning Creditors.  In consideration of this Agreement and in full satisfaction of the issues, claims, causes of action, or damages arising out of or related to the KDS Involuntary Bankruptcy Proceeding, the following payments shall be made to fully and finally satisfy the allowed administrative claims of the Petitioning Creditors:

    a.    Within 3 business days of the Final Order, KDS shall cause a payment of $100,000 to be made from non-debtor funds to counsel for the Petitioning Creditors.  The date on which this $100,000 payment is made shall be the date on which this Agreement becomes fully effective (the **"Effective Date"**); and

    b.    Within 15 business days of the Effective Date, KDS shall make a payment in an amount not to exceed $125,000 to counsel for the Petitioning Creditors.  Petitioning Creditors shall submit a full and final administrative claim to KDS within five days of the hearing on the approval of this Stipulation (the $125,000 and $100,000 payments are hereinafter defined as the "Settlement Payment").

    c.    The Settlement Payment shall be distributed by counsel to the Petitioning Creditors on a pro rata basis and in proportion to the legal costs and expenses incurred by the Petitioning Creditors with respect to filing the Involuntary Petition and related matters.

6.    Mutual Releases.  Except for the obligations set forth in this Agreement, and the Petitioning Creditors rights to receive future distributions as unsecured creditors in accordance with the Common Law Agreements, upon the Effective Date (the date the Bankruptcy Court's approval of the Agreement becomes final and not subject to an appeal) and without further act by any Party, KDS, on the one hand, and the Petitioning Creditors, on the other hand, fully release each other and each of their respective current and former parent company(ies), subsidiaries, assigns, predecessor and successor companies, employees, officers, directors, heirs,

3

executors, administrators, independent contractors and attorneys, from any and all claims, causes of action, damages, or demands of any nature whatsoever arising out of or related to the matters raised in the KDS Involuntary Bankruptcy Proceeding or other disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, claims for administrative expenses, demands, or damages, whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state, local law or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, which was raised or could have been raised prior to the Effective Date, and which relate in any way to KDS, or which may arise from or in any way relate to or derive from the KDS Involuntary Bankruptcy Proceeding. This release is intended as a general release and includes (but is not limited to) all allegations that were raised or could have been raised in any of the Involuntary Petition, however, any amounts due and owing from KDS to Petitioning Creditors, with the exception of Lumina Media, or from Petitioning Creditors to KDS, with the exception of Lumina Media, for the reselling and distributing of Petitioning Creditors' publications are not released by this Agreement. Thus, to be clear, to the extent that KDS makes additional distributions to its creditors, Petitioning Creditors, other than Lumina Media, shall receive distributions on a pro rata basis. Likewise, to the extent that any Petitioning Creditor, other than Lumina Media, owes KDS money for the pre-Petition Date sale or distribution of the Petitioning Creditor's goods, this Agreement does not release such Petitioning Creditor's obligation to KDS.

To avoid any doubt, KDS and Lumina Media agree to a full general release as to each other and each of their respective current and former parent company(ies), subsidiaries, affiliates[1], assigns, predecessor and successor companies, employees, officers, directors, heirs, executors, administrators, independent contractors and attorneys, from any and all claims, causes of action, damages, or demands of any nature whatsoever arising out of or related to the matters raised in the KDS Involuntary Bankruptcy Proceeding or other disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, claims for administrative expenses, demands, or damages, whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state, local law or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, which was raised or could have been raised prior to the Effective Date, and which relate in any way to KDS, or which may arise from or in any way relate to or derive from the KDS Involuntary Bankruptcy Proceeding.

7.    No Admission of Liability. Each of the Parties understands and agrees that this Agreement and the settlement provided for herein, are intended to compromise disputed claims and defenses, to avoid litigation and to buy peace, and that this Agreement and the settlement

---

[1] In order to avoid any doubt, I-5 Distribution, LLC is an affiliate of Lumina Media.

4

provided for herein shall not be construed or viewed as an admission by any Party of liability or wrongdoing, such liability being expressly denied.

8.    Entire Agreement. This Agreement embodies the entire understanding and agreement of the Parties relating to the subject matter hereof.  This Agreement shall not be amended, modified, altered or otherwise changed, except in writing, executed by all Parties hereto, and expressly stating that it is an amendment of this Agreement.

9.    Arm's Length Bargain.  The Parties agree that this Agreement has been negotiated at arm's length by parties of equal bargaining power.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

10.    Dismissal of Delaware State Court Action.  KDS shall dismissal the State Court Action with prejudice and without costs within five (5) days of the Effective Date.

11.    Knowledge Of Terms Of Agreement.  Each Party warrants and represents that in entering into this Agreement it is relying solely on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  No Party is relying on any representation or statement made by any other Party or any person representing such other Party except for the representations and warranties expressly set forth in this Agreement and in the Declaration of Michael Duloc attached hereto as Exhibit "A."  By signing this Agreement, the Parties hereby confirm and state that (a) they have each carefully read this Agreement, (b) that they each know the content of this Agreement and (c) that they have each been represented by independent legal counsel in connection with the negotiation of this Agreement.

12.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original, and shall constitute an effective, binding agreement on the part of each of the undersigned. Delivery by facsimile or email of a signed execution page shall be acceptable as proof of execution.

13.    Representation Of Authority To Sign. Each of the signatories hereto declares and represents that he or she is competent to execute this instrument and that he or she is duly authorized, and has the full right and authority, to execute this Agreement on behalf of the Party and to bind that Party to the terms of this Agreement for whom he or she is signing.

14.    California Civil Code Waiver.  The Parties expressly understand that California Civil Code Section 1542 provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if

known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby expressly waive any and all rights or benefits conferred by the provisions of California Civil Code Section 1542, as well as any other statute, law, or rule of similar effect, and acknowledge and agree that this waiver is an essential and material term of this Agreement and the settlement which it memorializes, without such waiver the settlement would not have been accepted.

15.    The provisions of this Agreement are not severable. To the extent that a court of competent jurisdiction declares any portion of this Agreement to be inoperative, the entirety of the Agreement shall become void and of no further force and effect and the Parties shall be returned to their status quo ante.

16.    The Parties shall execute such other or further documents as may be necessary to effectuate the terms of this Agreement.

17.    All matters affecting the execution, interpretation, validity, and enforceability of this Agreement shall be subject to, and interpreted under, federal bankruptcy law and, to the extent federal bankruptcy law relies upon state law, the laws of the State of Illinois.

18.    The Bankruptcy Court shall retain jurisdiction to enforce the terms and provisions of this Agreement and the order approving this Agreement, and to adjudicate, as may be appropriate, any and all disputes concerning or relating to the transactions contemplated hereby.

   IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below. Where an agent executes below on behalf of a Party, that individual represents that they have the full authority to sign on behalf of that Party.

**Execution Page Follows**

**FOX ROTHSCHILD LLP**

By: _____

William H. Stassen
Attorneys for Putative Debtor,
**KABLE DISTRIBUTION SERVICES, INC.**

Date: December 29, 2017


**HONIGMAN MILLER SCHWARTZ AND
COHN LLP**


By: _____

Name: Glenn Walter
Attorneys for Petitioning Creditors
**LUMINA MEDIA, LLC, F/K/A I-5
PUBLISHING, LLC; ACTIVE INTEREST
MEDIA, PARENT COMPANY OF WHOLLY
OWNED SUBSIDARY CRUZ BAY
PUBLISHING, INC.; KSE SPORTSMAN
MEDIA, INC., A/K/A INTERMEDIA
OUTDOORS, INC.; ARCHIE COMIC
PUBLICATIONS, INC.; CRUZ BAY
PUBLISHING, INC.; AND KEY PUBLISHING
GROUP, LLC, AS WELL AS FOR I-5
DISTRIBUTION, LLC**

Date: December 29, 2017


**PLATZER, SWERGOLD, LEVINE,
GOLDBERG, KATZ & JASLOW, LLP**


By: _____

Name: Cliff Katz
Attorneys for Petitioning Creditor
**Publications International LTD**

Date: December 29, 2017

7

## EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| KABLE DISTRIBUTION SERVICES, INC., | ) | Case No. 17-80075 |
| | ) | |
| Putative Debtor. | ) | Hon. Thomas M. Lynch |
| | ) | |

DECLARATION OF MICHAEL DULOC IN SUPPORT OF MOTION OF KABLE
DISTRIBUTION SERVICES, INC. FOR ENTRY OF ORDER APPROVING 9019
MOTION AND DISMISSING CASE

I, Michael Duloc, declare that:

1.     I am President and Chief Executive Officer of Kable Distribution Services, Inc. ("KDS")
and am authorized to submit this declaration on behalf of KDS.  If called to testify, I could and
would competently testify with respect to the following facts.

2.     I submit this Declaration in support of the 9019 motion filed to resolve and dismiss
KDS's involuntary bankruptcy case.

3.     To the best of my knowledge, KDS has not paid dividends to Amrep Corporation within
the last ten (10) years.

4.     To the best of my knowledge, there has been no cancellation of intercompany
indebtedness owed to KDS within at least the last five (5) years.

5.     To the best of my knowledge, no tax sharing agreement was in place between Amrep and
KDS.

6.     KDS is not in possession of Amrep's excess loss account (ELA) work papers specifically
relating to the Material Definitive Agreement entered into on February 9, 2015, and as disclosed
in Amrep's 8K filing on or about the same date.

7.     My aggregate compensation was consistent with the compensation I received while
employed at KDS in proportion of the representation and services provided to KDS.

8.     Amrep, as the secured lender, swept all amounts due, as of January 20, 2016, under a
Buyer Note secured by various entities, including KDS and Kable Product Services, Inc., (KPS)
directly from the KPS bank account controlled by Amrep.  To the best of my knowledge, less
than $100,000, including interest charges and audit fees, was paid by KDS to Amrep under the
Buyer Note.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28ᵗʰ day of December 2017, in Pennsylvania.

Michael Duloc,
President & CEO
Kable Distribution Services, Inc.